# Hayes' Appeal.

1. The rule that the presumption of payment arises from the lapse of time—20 years—is in the nature of the Statute of Limitations, furnishing indeed not a legal bar but a presumption of facts, not subject to the discretion of the jury. They are bound to adopt it as satisfactory proof until the contrary appears. This presumption arises upon a lien of indefinite duration and upon every species of security for the payment of debt.

2. Where a bill in equity is so framed as to present the objection, that from lapse of time there is a legal presumption of fact that the debt has been paid, without any attendant circumstances to obviate it, courts of equity act on the analogy of the law as to the Statute of Limitations; and will not entertain a suit for relief, if it would be barred at law. This objection may be taken advantage of by demurrer but if it does not appear on the face of the bill it must be taken by way of plea or answer.

March 31st, 1886.  Before MERCUR, C. J., GORDON. TRUNKEY, STERRETT, GREEN and CLARK, JJ.  PAXSON, J. absent.

APPEAL from the Court of Common Pleas No. 1 of *Philadelphia county*, in equity:  Of January Term 1886, No. 8.

This was an appeal by Michael Hayes from the decree of said court sustaining a demurrer to and dismissing his bill in

equity against The Bald Eagle Valley Railroad Company, The Pennsylvania Railroad Company and The Fidelity Insurance Trust and Safe Deposit Company, Mortgagees.

The following is an abstract of the plaintiff's bill:

1. That the Tyrone and Lock Haven Railroad, a corporation created by the Commonwealth of Pennsylvania, commenced the construction of its railroad from Tyrone to Lock Haven.

2. The plaintiff, as contractor for the said Tyrone and Lock Haven Railroad Company, in the years 1857, 1858 and 1859, did grading, bridging and masonry for it to the amount of about $20,000; that he is unable to state the exact amount, because he never received final estimates and has never had access to the books of the said railroad company. The said Tyrone and Lock Haven Railroad Company, while indebted to plaintiff for said work, without his consent, executed a mortgage upon all its road-bed, franchises and property of every description, for $500.000.

On June 6th, 1860, proceedings in foreclosure were instituted in this court, and on December 7th, 1860, this Court decreed that said premises should be sold.

That on January 29th, 1861, the said railroad and its franchises, pursuant to said order and decree, were sold to Philip M. Price for $21,000, which was a grossly inadequate price; that the sale was fraudulently conducted, and bidders were intimidated, in order that said Price and his confederates might become owners of said railroad for the smallest possible sum, and thus defraud the plaintiff and the other contractors and laborers of the money justly due them for work and labor done.

By Act of Assembly, on March 25th, 1861, the said Philip Price and his associates were created a body politic and corporate, under the name of the Bald Eagle Valley Railroad Company, one of the defendants herein.

That upon the sale of said railroad and franchises, as aforesaid, the Tyrone and Lock Haven Railroad Company suspended business, and ceased from the ordinary business for which said corporation was created, and ceased to have an existence as a corporation.

By the said Act of Assembly, all the rights, franchises and privileges, together with the property of said Tyrone and Lock Haven Railroad Company, were transferred to and became vested in the said Bald Eagle Valley Railroad Company, and it became the successor of said Tyrone and Lock Haven Railroad Company, and as such successor, took possession of said railroad, franchises and property, including the work and labor done by the plaintiff, and proceeded to equip and use

said railroad without paying the plaintiff any part of the money due him as contractor, laborer and workman.

On December 7th, 1864, the Bald Eagle Valley Railroad Company leased its railroad franchises and property to the Pennsylvania Railroad Company for the term of ninety-nine years.

On January 1st, 1880, the Bald Eagle Valley Railroad Company, without the consent of the plaintiff having been previously obtained, mortgaged all its railroad property and franchises to the Fidelity Insurance, Trust and Safe Deposit Company for $400,000.

That the plaintiff is legally and equitably entitled to receive from the Bald Eagle Valley Railroad Company and the Pennsylvania Railroad Company the aforesaid balance or sum of $20,000, with interest from March 8th, 1859, or whatever sum may be found due the plaintiff upon a full settlement for said work and labor done upon said railroad as contractor, laborer and workman, as aforesaid, and because the said Tyrone and Lock Haven Railroad Company has ceased to exist, the plaintiff has no remedy in law.

The plaintiff prays discovery.

That an account be stated between the plaintiff and the Tyrone and Lock Haven Railroad Company, and that the amount of the liability of the defendants be definitely ascertained.

That the Court direct the defendants to pay the plaintiff such sum as may be due him, and further relief.

To this the defendant filed the following demurrer:

The defendants demur to the whole bill, and for cause of demurrer say that the complainant's said bill of complaint, in case the same were true, which these defendants do in no wise admit, contains no matter of equity whereon this Court can ground any decree, or give the complainant any relief or assistance as against these defendants.

The Court entered a decree sustaining the demurrer and dismissing the bill.

In this decree the plaintiff took this appeal assigning this decree for error.

*Bertram Hughes* for appellant.—1. The suit is properly brought against the Bald Eagle Valley Railroad Company, the Pennsylvania Railroad Company and Fidelity Trust Company.

The assets of an insolvent corporation are a fund for the payment of its debts. The holders of the property take it, charged with a trust in favor of creditors, which a Court of Equity will enforce: Curran *v.* State of Arkansas, 15 Howard, 307.

The parties have been joined as defendants, in the manner approved by this Court, in Shomokin Valley, &c., Railroad *v.* Malone, 4 Norris, 25, 36.

2. The plaintiff, being a contractor, has an absolute, indefinite lien upon the railroad and franchises of the Tyrone and Lock Haven Railroad, in the possession of the Bald Eagle Valley Railroad Company and the Pennsylvania Railroad Company. As to the plaintiff, the mortgages and the proceedings thereon are null and void: Act of Assembly, January 21st, 1843, Pamphlet Laws, 367 ; Shamokin Valley, &c., Railroad *v.* Malone, 4 Norris, 35 ; Tyrone & Clearfield R. R. Co. *v.* Jones, 29 P. F. S., 64.

3. The plaintiff's claim is not barred by the Statute of Limitations.

The seventh section of the Act of April 25th, 1850, Pamphlet Laws, 570, provides that :

" The provisions of the Act of 27th of March, 1713, entitled ' An Act for the limitations of actions,' shall not hereafter extend to any suit against any corporation or body politic which may have suspended business, or made any transfer or assignment in trust for creditors, or who may have, at the time or after the accruing of the cause of action, suspended the ordinary business for which said corporation was created."

The liability accrued in 1859. On January 29th, 1861, the Tyrone and Lock Haven road was sold by decree of Court. The corporation then became extinct, and ceased " from the ordinary business for which it was created." The statute then stopped running, and the legal bar is not in the plaintiff's way : Shamokin Valley &c., Railroad *v.* Malone, 4 Norris, 34.

4. The claim is not stale. We are suing to enforce a strictly legal cause of action, but are compelled to resort to an equitable form, because the Act has not provided us with means to enforce it at law. We cannot obtain a judgment against the Tyrone and Lock Haven Railroad, because it is an extinct corporation : Shamokin Valley, &c., Railroad *v.* Malone, 4 Norris, 36, 37.

The decisions upon suits of this kind hold that a claim of this description does not become stale.

It was intended that the property, into whosesoever hands it might come, should remain, subject to a paramount claim of the contractor, so long as the debt due to him remained unpaid. That the contractor was given a lien of indefinite duration seems quite plain : Fox *v.* Seal, 22 Wallace, 424.

A presumption of payment may arise from lapse of time. That is not conclusive, but casts upon us the burden of rebutting it : Reed *v.* Reed, 14 Pa. St., 230.

A mortgage may be foreclosed in equity after twenty years.

Equity, by analogy, follows the Statute of Limitations. In this case there is no limitation: Act of April 25th, 1850.

*David W. Sellers*, for appellees.—1. It is submitted that the Act of March 25th, 1861, P. L., 214, incorporating the Bald Eagle Valley R. R. Co., validates all of the proceedings resulting in the sale of the Tyrone and Lock Haven Railroad Company, and necessarily defeats the unrecorded und unasserted demand of the claimant, an Act being the highest species of record conveyance: Caverow *v.* Insurance, 2 P. F. S., 287.

2. If, however, the remedy given by the resolution of January 21st, 1843, P. L., 367, survived against the Bald Eagle Valley Railroad Company, then it is submitted that, as at law this claim would have been obliterated at the end of twenty-one years, it is also the same in equity: Hamilton *v.* Hamilton, 6 Harris, 20; Irvin *v.* Cooper, 11 Norris, 304; Wagner *v.* Baird, 7 Howard, 234; Cope *v.* Humphreys, 14 S. & R., 15; Foulke *v.* Brown, 2 Watts, 214; Dremen *v.* Sechrist, 1 P. & W., 419; Aukeny *v.* Penrose, 6 Harris, 192; Prior *v.* Wood, 7 Casey, 145; Bailey *v.* Vehmeyer, 7 W. N. C., 195; Porter & Page's Est., 4 P. F. S., 465.

In Reed *v.* Reed, 46 Pa. St., 239, and in Bentley's Appeal, 11 W. N. C., 422, the Court says the lapse of twenty years "*prima facie* obliterates the debt."

In Commonwealth *v.* Snyder, 12 P. F. S., 157, it was held that the lapse of twenty years gives rise to a presumption of payment of the distribution of a decedent's estate.

In Seibert's Appeal, 2 W. N. C., 53, s. c., on re-argument, Id., 557, held an administrator, *d. b. n. c. t. a.*, not entitled after the lapse of fifty years to call the representatives of a deceased executor to account; see also Eckert's Appeal, 6 W. N. C., 21; Bentley's Appeal, 11 W. N. C., 422; Reed *v.* Reed, 46 Pa. St., 239; Davis *v.* McHenry, 11 W. N. C., 305.

It does not follow that because the Act of April 15th, 1850, P. L., 570, as to debts and liabilities incurred to contractors, laborers and workmen, under the resolution of 1843, excludes the provisions of the Act for the limitation of actions that the presumptions of payment and in bar of stale claims do not arise.

The presumption, where the time elapsed is sufficient, is absolute, and is nowhere qualified by any circumstance except such as rebuts it: Staymaker *v.* Wilson, 1 P. & S., 219; Biddle *v.* Girard Bank, 16 W. N. C., 397.

The only case cited in the paper-book of the appellant, Railroad *v.* Malone, 4 Norris, 35, does not militate the foregoing views.

[Hayes' Appeal.]

Mr. Justice TRUNKEY delivered the opinion of the Court, October 4th, 1886.

That the plaintiff had a lien of indefinite duration, prior to all other liens on the property, for the sum due him by the Tyrone and Lock Haven Railroad Company, as contractor for the construction of the road, is incontrovertible. And the lien remained, notwithstanding the judicial sale in the proceeding on the mortgage : Railway Co. *v.* Jones, 79 Pa. St., 60 ; Railway Co. *v.* Malone, 85 Id., 25. To that debt the Statute of Limitations does not apply.

Although the debt is an indefinite lien, there is nothing in the statutes to save it from the presumption of payment arising from the lapse of time. This presumption arises upon every species of security for the payment of money. The lien of a recognizance is indefinite, yet it lasts not forever ; it is subject to the legal presumption of payment, after twenty years from the time of payment : Aukeny *v.* Penrose, 18 Pa. St., 190. The rule is in the nature of the Statute of Limitations, furnishing indeed not a legal bar, but a presumption of fact, not subject to the discretion of the jury ; they are bound to adopt it as satisfactory proof till the contrary appears : Cope *v.* Humphreys, 14 S. & R., 15.

After the lapse of twenty years all evidences of debt excepted out of the Statute of Limitations, are presumed to be paid. This is a rule of convenience and policy, the result of a necessary regard to the peace and security of society. Transactions cannot be fairly investigated and justly determined after a long time has involved them in uncertainty and obscurity. Justice cannot be satisfactorily done when parties and witnesses are dead, vouchers lost or thrown away, and a new generation has appeared on the stage of life : Foulk *v.* Brown, 2 Watts, 209.

The plaintiff's bill sets forth that the debt was due on March 8th, 1859, from which date he claims it bears interest ; that on January 29th, 1861, pursuant to an order and decree of the Supreme Court, in a proceeding to foreclose a mortgage, the road-bed, franchises and property of the Tyrone and Lock Haven Railroad Company were sold to Philip M. Price for a grossly inadequate consideration ; that on March 25th, 1861, said Price and others were created a corporation under the name of The Bald Eagle Railroad Company, which company was invested with all the franchises and property of the Tyrone and Lock Haven Railroad Company ; and that the sum due to the plaintiff is still unpaid.

This bill was filed on September 8th, 1884, twenty-five years after the debt became due and payable, and twenty-three years after the judicial sale of the property of the debtor,

3 AMERMAN—25

and the organization of the Bald Eagle Railroad Company, one of the defendants. What has been the cause of delay in bringing suit nowhere appears in the bill. Not a circumstance is stated showing that the debt is unpaid. Hence, on the face of the bill, the presumption is that the debt has been paid; and the action falls, unless it is unnecessary to show facts repelling the presumption of payment.

Where a bill is so framed as to present the objection, that from lapse of time there is a legal presumption of fact that the debt has been paid, without any attendant circumstances to obviate it, courts of equity act on the analogy of the law as to the Statute of Limitations; and will not entertain a suit for relief, if it would be barred at law. And this objection may be taken advantage of by demurrer; but if it does not appear on the face of the bill it must be taken by way of plea or answer: Story's Eq. Jur., § 503; see §§ 751, 813.

In Pratt *v.* Vattier *et al.*, 9 Peters, 405, a bill for conveyance of the legal title to real estate was dismissed, aside from the Statute of Limitations, because lapse of time was a bar, there being no circumstances stated in the bill, or shown in the evidence, to overcome the adverse possession; and courts of equity will not entertain stale demands. The remark of Lord CAMDEN was approvingly quoted : "A court of equity, which is never active in relief against conscience or public convenience, has always refused its aid to stale demands, when the party has slept on his rights, or acquiesced for a great length of time. Nothing can call forth this Court into activity, but conscience, good faith and reasonable diligence. Where these are wanting, the Court is passive and does nothing; laches and neglect are always discountenanced; and therefore from the beginning of this jurisdiction there was always a limitation of suits in this Court." See Wagner *v.* Baird, 7 How., 234; Story's Eq. Jur., § 1520 and note.

Decree affirmed, and appeal dismissed at the costs of the appellant.