## In re Dissolution of the Title Guaranty and Surety Company

*S. Augustus Davis* and *Howard M. Shaw*, for plaintiff.

HOBAN, P. J., August 24, 1950.—This case is before the court on a bill in equity to cause a voluntary dissolution of the Title Guaranty and Surety Company, formerly the Title Guaranty and Trust Company of Scranton, Pa. This proceeding is the one provided in the Insurance Law of May 17, 1921, P. L. 682, sec. 338, 40 PS §460. The bill avers that the company now sought to be dissolved was originally incorporated as the Title Guaranty and Trust Company of Scranton, Pa., through appropriate proceedings, subsequently securing a change of name to the Title Guaranty and Surety Company; that it has from time to time by corporate proceeding and under the supervision of the Insurance Department of the Commonwealth of Pennsylvania relinquished doing business under its various powers granted to it; that all of its contingent liabilities

have from time to time either been assumed by other companies or properly reinsured; that the company has no outstanding debts or claims against it; that all stockholders have received the prescribed notice of the pendency of these proceedings, and that the company is now ripe for dissolution under supervision of this court. The Insurance Commissioner of the Commonwealth of Pennsylvania has received notice of these proceedings and has been served with a copy of the bill in equity and the amended bill in equity and has, through his counsel, advised the court and counsel for the company as to appropriate items to be considered prior to formulating a decree. No appearances have been filed for any one in opposition to these proceedings and no answer has been filed. The cause came on to be heard before the Hon. T. L. Hoban, president judge, on September 14, 1949, at which time oral and documentary evidence was presented.

From the pleadings and from the oral and documentary evidence we make the following

## Findings of Fact

1. That the Title Guaranty and Surety Company was originally incorporated February 20, 1901, as the Title Guaranty and Trust Company of Scranton, Pa., and thereafter engaged in the banking and trust business until November 1905; in the surety business until November 15, 1913, and in the title guarantee business until May 16, 1927.

2. That by due corporate action the corporation ceased doing a banking and trust business in November 1905.

3. That on January 25, 1906, the name of the corporation was changed to Title Guaranty and Surety Company.

4. That on November 15, 1913, the corporation ceased doing a surety business and by two certain reinsurance agreements, the first with American

Surety Company of New York, dated December 9, 1913, and the second with the Casualty Company of America, dated December 29, 1914, reinsured every surety engagement on which there was no outstanding claim or notice of outstanding claim.

5. That no policy of title insurance has been issued by the corporation since May 16, 1927, and that all policies of title insurance issued by the corporation have been reinsured by the Commonwealth Title Company of Philadelphia and that the corporation is no longer liable on any of the policies.

6. That the reinsurance and assumption of risk by the American Surety Company of New York and the Casualty Company of America was approved by the Insurance Commissioner of Pennsylvania.

7. That from November 15, 1913, to the present no surety bonds have been written by the Title Guaranty and Surety Company, nor has it accepted any premiums on bonds issued.

8. That all claims arising from surety engagements presented to the company have been adjusted and paid.

9. That the officers and agents have diligently traced the records of the company and can find no unadjusted claims against it.

10. That at the present time there are 9,331 shares of capital stock outstanding, 669 shares having been purchased by the corporation and held as treasury stock.

11. That of the capital stock outstanding, 9,310 shares are held by the Scranton Lackawanna Trust Company under the terms of a certain voting trust agreement, 20 shares are held by the estate of J. F. Broadbent, and one share by L. H. Watres.

12. That by mutual agreement between the cestui que trustent and the trustee, the trustee has, since 1914, received all notices on behalf of the cestui que trustent

and has exercised all rights of voting the stock deposited with them as trustee.

13. That the stockholders of the corporation at a meeting duly called and held January 15, 1949, authorized and directed the officers to dissolve the corporation.

14. That the bill in equity to dissolve was started under the seal of the corporation by and with the consent of the majority of the stockholders obtained at a duly convened meeting.

15. That a copy of the bill in equity has been served on the Insurance Commissioner of Pennsylvania.

16. That the accounts of the officers and directors have been filed in this court and are true and correct.

17. That the assets of the corporation amount to approximately $154,161.51, of which $50,000 are on deposit with the Insurance Commissioner of Pennsylvania.

18. That the corporation has no liabilities except the capital stock and surplus and the expenses of this proceeding.

## Discussion

This corporation appears to be ready for dissolution. In 1905 it closed out its banking and trust business and satisfied all its customers and debtors. In 1927 it closed its title guarantee business and reinsured its obligations in toto. In 1913 it stopped writing surety bonds and reinsured every bond which had not matured by breach of covenant or on which there had not been notice of the possibility of such maturing. The officers have diligently traced every known liability and adjusted all claims. These officers are men of character and reliability and they have spent 37 years at the job. All the evidence and every presumption is that they have satisfied every liability of the corporation.

We have referred to presumptions above. The last surety bond was issued by the corporation in 1913, 37

years ago. A bond is an instrument under seal and thus excepted out of the statute of limitations. However, a bond is still an evidence of debt though under seal and as such governed by the rules which apply thereto, in this case, that after a lapse of 20 years a presumption of payment has arisen. This is a rule which has been written into the law of Pennsylvania from earliest times for the protection of society and to make possible the settlement of affairs which have become beclouded by the lapse of time.

"After the lapse of twenty years all evidences of debt excepted out of the Statute of Limitations, are presumed to be paid. This is a rule of convenience and policy, the result of a necessary regard to the peace and security of society. Transactions cannot be fairly investigated and justly determined after a long time has involved them in uncertainty and obscurity. Justice cannot be satisfactorily done when parties and witnesses are dead, vouchers lost or thrown away, and a new generation has appeared on the stage of life: Foulk v. Brown, 2 Watts 209": Hayes' Appeal, 113 Pa. 380, 385.

And this presumption is a strong one and is strengthened as time passes on: Lefever's Estate, 278 Pa. 196.

"Moreover, although it has never been held that any lapse of time, however great, will render the presumption so conclusive that it may not be rebutted, it has been repeatedly held that where, as in the present case, there has been a lapse of more than thirty years, it is, in legal effect, so well nigh conclusive as to require the very clearest and most explicit kind of proof to dislodge it": Frey's Estate, 342 Pa. 351, 354.

In the 37 years since the corporation has ceased doing a surety business, records have been lost or destroyed and memories grown stale, and it is to be presumed that the same applies as well to principals and possible claimants under the bonds. To permit recovery on

claims of this age, if any arose, after evidence is beyond the reach of those whom they would make liable, would be a travesty on justice.

"After twenty years the presumption of payment is strong. It gains strength with age, and after thirty years it requires very clear and explicit proof to dislodge it": Bartram's Estate, 282 Pa. 536, 538.

## Conclusions of Law

1. The bill filed in this action meets the requirements of the Act of May 17, 1921, P. L. 682, 40 PS §460.

2. That the statutory requirements, except the filing of the certificates of the Auditor General, State Treasurer and the Attorney General showing that all taxes due the Commonwealth have been paid, and filing of a certified copy of the decree in the office of the Secretary of the Commonwealth, have been complied with.

3. Before final dissolution becomes effective, certificates of the Auditor General, State Treasurer and Attorney General showing that all taxes due the Commonwealth have been paid must be filed with this court and a certified copy of the decree of dissolution filed and recorded in the office of the Secretary of the Commonwealth.

4. That all assets of the corporation after payment of any further fees and allowances belong to the stockholders.

5. That the prayer of the petition may be granted without prejudice to the public welfare or to the interests of the stockholders.

6. The Title Guaranty and Surety Company should be dissolved.

## Decree Nisi

Now, August 24, 1950, upon consideration of the foregoing case, it is ordered, adjudged and decreed that the Title Guaranty and Surety Company, a Pennsylvania corporation, is dissolved; the accounts of the officers, directors and trustees are hereby approved;

492

and the officers, directors and trustees of the Title Guaranty and Surety Company are hereby authorized, empowered and directed to transfer all of the assets of the corporation to the Scranton Lackawanna Trust Company as liquidating trustee; Scranton Lackawanna Trust Company is further directed to liquidate the assets of the corporation, pay all costs, debts and legal fees of the corporation, and to distribute the balance remaining to the several stockholders in their proportionate shares.

This decree nisi to become absolute unless within 20 days thereof exceptions thereto are filed of record. Final decree to await the filing in court of the certificate of the Auditor General, State Treasurer and Attorney General that all taxes due the Commonwealth have been paid in full and to become effective upon the filing and recording in the office of the Secretary of the Commonwealth of a certified copy of the decree, as provided by the Act of May 17, 1921, P. L. 682, 40 PS §460.